UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTHONY BROWN,** **Plaintiff,** v. **JOEL TANIS & SONS, INC.,** *et al.*, **Defendants.** | Civ. No. 2:13-cv-02984 (WJM) **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Anthony Brown filed this employment discrimination case against his employer, Joel Tanis & Sons, Inc. and seven of his coworkers (together, "Defendants"). Six of the seven coworker Defendants – Todd Dages, Daniel Evers, John Johnson, John Mernick, Marlon Orellana, and Raymond Hazelgreen (together, "Moving Defendants") – move to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons explained below, Moving Defendants' motion to dismiss is partially **GRANTED** and partially **DENIED**.

**I.    BACKGROUND**

      Plaintiff, an African-American, is a supply driver for Defendant Joel Tanis & Sons. Second Amended Complaint ("SAC") ¶¶ 1, 57, ECF No. 29. Defendant Tony Dell is the owner of Joel Tanis & Sons. SAC ¶ 40. Neither Defendant Joel Tanis & Sons nor Defendant Dell have joined in the instant motion. Moving Defendant Todd Dages is allegedly Plaintiff's supervisor. SAC ¶ 27. Moving Defendants Evers, Johnson, Mernick, Orellana, and Hazelgreen (together, the "Coworker Defendants") are Plaintiff's coworkers. SAC ¶¶ 11-15.

      Plaintiff alleges that, since September 2005, Moving Defendants have repeatedly called him derogatory racial slurs, such as "nigger" and "black mother fucker," and harassed him because of his race. SAC ¶¶ 21, 24. The Complaint also alleges that Dages was aware of, and participated in, the harassment. SAC ¶ 55. Plaintiff alleges that, after he reported the abuse, he received even worse treatment. SAC ¶ 32. Specifically, Moving Defendants "began to overly criticize Plaintiff, and even "tried to kill Plaintiff by cutting his brakes on his car in retaliation for his complaints." SAC ¶ 31. The Complaint

1

also alleges that Dages threatened to pack his cement mixing paddles with cement and began taking "pictures of Plaintiff at work in order to harass and intimidate him." SAC ¶ 56.

Plaintiff filed charges with the EEOC and obtained a Right to Sue letter. Plaintiff then filed this action, asserting claims for hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination (the "NJLAD"), as well as intentional infliction of emotional distress.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

## III.   DISCUSSION

Moving Defendants move to dismiss Count 1 (Hostile Work Environment under 42 U.S.C. § 1981), Count 4 (Hostile Work Environment under the NJLAD), Count 5 (Retaliation under the NJLAD), Count 6 (Aiding and Abetting under the NJLAD), and Count 7 (Intentional Infliction of Emotional Distress) of the Second Amended Complaint.

### A.  Hostile Work Environment under Section 1981 (Count 1)

Plaintiff alleges that the harassment began in September 2005, and was still occurring at the time he filed the Second Amended Complaint. Second Amended

Complaint ("SAC") ¶¶ 20-21, 57.  Moving Defendants argue that allegations prior to May 8, 2009 are time-barred, and should be stricken from the Second Amended Complaint.  Moving Defendants further contend that the incidents that occurred after that date are insufficient to state a hostile work environment claim.  The Court finds that the continuing violations doctrine saves the allegations that occurred outside of the statutory time period, and will deny Moving Defendants' motion to dismiss Count 1.

The statute of limitations for a hostile work environment claim under Section 1981 is four years.  *Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 96 (3d Cir. 2005) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, (2004).  The continuing violations doctrine provides "an equitable exception to the timely filing requirement."  *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995).  Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely if the last act evidencing the continuing practice falls within the limitations period."  *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991).  "[I]n such an instance, the court will grant relief for the earlier related acts that would otherwise be time-barred."  *Id.*

The SAC alleges that Moving Defendants have repeatedly and frequently subjected Plaintiff to various racial slurs over the past eight years.  Many of these alleged acts occurred within the limitations period.  As these acts are all components of the same hostile work environment claim, the Court will not strike any allegations from the Second Amended Complaint.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

Moreover, the Court finds that Plaintiff has stated a hostile work environment claim under Section 1981.  To assert a prima facie case of hostile work environment, plaintiff must show that (1) he suffered intentional discrimination because of his race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the basis for employer liability is present. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) (citations and footnotes omitted), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Tucker v. Merck & Co.*, 131 Fed. App'x 852, 858 (3d Cir. 2005) (applying standard to a Section 1981 hostile work environment claim).  Individual employees can be held liable under Section 1981.  *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986) *aff'd*, 481 U.S. 604 (1987).

Here, Moving Defendants' alleged frequent and continual use of the words "nigger" and "black mother fucker" to refer to Plaintiff, combined with numerous other threats and racist remarks, are more than sufficient to state a Section 1981 hostile work

environment claim.  The Court will thus deny Moving Defendants' motion to dismiss Count 1.

### B.  NJLAD Hostile Work Environment Claims (Count 4)

Plaintiff's state law hostile work environment claim derives from Section 10:5-12(a) of the NJLAD.  *See* N.J. Stat. Ann. § 10:5–12(a).  Moving Defendants argue that the Court should dismiss Plaintiff's NJLAD hostile work environment claim, because Section 10:5-12(a) of the NJLAD does not provide for individual liability.  The Court agrees.  Section 10:5-12(a) prohibits "an employer" from discriminating against an employee with respect to the "terms, conditions or privileges" of his employment on the basis of his race or gender.  "[T]he plain meaning of the definition of employer in the [NJLAD] does not include a supervisor."  *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 947 A.2d 626, 645 (N.J. 2008) (stating that "the plain meaning of the definition of employer under the NJLAD does not include a supervisor).  Plaintiff thus cannot hold Moving Defendants individually liable for hostile work environment under the NJLAD.

### C.  NJLAD Retaliation (Count 5)

Moving Defendants argue that the Court should dismiss Plaintiff's retaliation claim under Section 10:5-12(d) of the NJLAD, because that provision only provides for employer liability.  Moving Defendants further argue that Plaintiff has failed to sufficiently allege either a protected activity or retaliatory conduct.

Only supervisory employees can be held liable for retaliation under the NJLAD.  *Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005) ("Because Plaintiff does not allege that Defendants McManus or Seybold held a supervisory role, the retaliation claim is not proper against these Defendants and must be dismissed.").  Accordingly, as against the Coworker Defendants, Count 5 will be dismissed with prejudice.  On the other hand, the Complaint specifically alleges that Dages is Plaintiff's supervisor.  SAC ¶ 27.  Assuming that is true, Dages can be held individually liable for retaliation under the NJLAD.  *See id.*

The Court further finds that Plaintiff has stated a timely retaliation claim against Dages.  To establish a prima facie case of retaliation under the NJLAD, Plaintiff must allege that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001).  When evaluating a NJLAD retaliation claim, case law interpreting Title VII is instructive.  *Grigoletti v. Ortho Pharmaceutical Corp.*, 118 N.J. 89, 97 (1990).  Under Title VII, non-employment related actions or actions taken outside the workplace can support a retaliation claim, if the adverse action "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  And increased harassment may

form the basis for a retaliation claim.  *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998).

Plaintiff alleges that after he complained about the harassment and filed an EEOC complaint, Moving Defendants began to overly criticize him.  The Complaint also alleges that, sometime around June 2012, Moving Defendants cut Plaintiff's brakes.  Plaintiff further alleges that, after he complained about the harassment, Dages threatened to "pack that Nigger's paddles" and began taking pictures of Plaintiff at work.  These acts are sufficient to allege a retaliation claim against Dages.  And at least one of these alleged acts – that Moving Defendants cut Plaintiff's brakes – occurred within the two-year statute of limitations for NJLAD claims.  SAC ¶ 52; *Montells v. Haynes*, 627 A.2d 654, 659 (N.J. 1993).[1]  The Court will thus deny Moving Defendants' motion to dismiss the NJLAD retaliation claim against Dages.

### D.  NJLAD Aiding and Abetting (Count 6)

Moving Defendants argue that the Court should dismiss Plaintiff's aiding and abetting claim under NJLAD Section 10:5-12(e), because only a supervisory employee can be liable under that provision.  The Court agrees that only supervisors can be liable under Section 10:5-12(e), and will dismiss Plaintiff's claims for aiding and abetting against the Coworker Defendants with prejudice.  *See Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 434-35 (D.N.J. 2003) (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 129 (3d Cir. 1999) abrogated on other grounds in *Nance v. City of Newark*, 501 F. App'x 123, 129 (3d Cir. 2012).  But, because the Complaint alleges that Dages is Plaintiff's supervisor, Moving Defendants' argument is inapplicable to the aiding and abetting claim against Dages.

Moving Defendants alternatively argue that the statute of limitations precludes an aiding and abetting claim against Dages.  However, the continuing violation doctrine, which the Court discussed above in relation to Plaintiff's Section 1981 claim, applies to Plaintiff's NJLAD claims.  *See Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 621 (N.J. 2002) (adopting the *Morgan* formulation of the continuing violation doctrine when determining the timeliness of an NJLAD claim).  The Court will thus deny Moving Defendants' motion to dismiss the aiding and abetting claim against Dages.

### E.  Intentional Infliction of Emotional Distress (Count 7)

---

[1] The Court is unable to make the necessary statute of limitations determinations as to the other retaliatory acts at this time.  *See Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (stating that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)").  Dages may re-raise his statute of limitations arguments as to those acts later in the litigation.

Moving Defendants argue that Plaintiff cannot concurrently bring an NJLAD claim with an intentional infliction of emotional distress ("IIED") claim based on the same facts. Moving Defendants alternatively argue that their conduct was not sufficiently outrageous to support an IIED claim. Plaintiff concedes that an IIED claim cannot be based on the same facts as those used for a NJLAD claim, but argues that if the Court decides to dismiss the NJLAD claims against any Moving Defendant, then the IIED claim against that Moving Defendant should survive.

Contrary to Moving Defendants' argument, the NJLAD does not abrogate all common law causes of action based on the same facts. *Kwiatkowski v. Merrill Lynch*, A-2270-06T1, 2008 WL 3875417, at *17 (N.J. Super. Ct. App. Div. Aug. 13, 2008) *cert. denied*, 962 A.2d 530 (N.J.2008); *see also* N.J. Stat. Ann. 10:5-27 ("Nothing herein contained shall bar, exclude or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination."); N.J. Stat. Ann. 10:5-3 ("The Legislature intends that such damages be available to all persons protected by this act and that this act shall be liberally construed in combination with other protections available under the laws of this State."). Rather, the NJLAD preempts *duplicative* common law claims. *Kwaiatkowsky*, 2008 WL 3875417, at *17 (citing *Dale v. Boy Scouts of Am.*, 734 A.2d 1196, 1219 (1999) *rev'd on other grounds*, 530 U.S. 640 (2000)). "[W]here the common law claim would 'protect an interest in addition to or aside from those protected by [the] statutory action,' it should not be deemed duplicative." *See id.* (citing *Dale*, 734 A.2d at 1219).

Because the NJLAD does not provide for non-supervisory employee liability, Plaintiff's NJLAD claims are not duplicative of his IIED claim against the Coworker Defendants. *See id.* (finding that "[a] claim for intentional infliction of emotional distress is not duplicative of a statutory claim for wrongful discharge based on unlawful discrimination, even though both claims may rely on the same set of facts"). The Court further finds that Plaintiff has sufficiently alleged the elements of an IIED claim. *See Taylor v. Metzger*, 706 A.2d 685, 695 (N.J. 1998) (finding, "[i]n light of the potency of racial slurs," that a supervisor's use of a single racial epithet was sufficient to survive summary judgment on an IIED claim). The Court will thus deny Moving Defendants' motion to dismiss the IIED claim against the Coworker Defendants. The NJLAD claims are, however, duplicative of the IIED claim against Dages, and the Court will dismiss that claim with prejudice.

## IV. CONCLUSION

For the reasons stated above, Moving Defendants' motion to dismiss is partially **GRANTED** and partially **DENIED**. Moving Defendants' motion to dismiss Count 1 is **DENIED**. Moving Defendants' motion to dismiss Count 4 is **GRANTED** and Count 4 (against Moving Defendants) is dismissed with prejudice. Moving Defendants' motion to

dismiss Counts 5 and 6 is **DENIED** as to Dages, and **GRANTED** as to the Coworker Defendants.  As against the Coworker Defendants, Counts 5 and 6 are dismissed with prejudice.  Finally, Moving Defendants' motion to dismiss Count 7 is **DENIED** as to the Coworker Defendants, and **GRANTED** as to Dages.  Count 7 (against Dages) is dismissed with prejudice.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 12, 2014**