UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTHONY BROWN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JOEL TANIS & SONS, INC.,** *et al.***,**<br><br>**Defendants.** | Civ. No. 2:13-cv-02984 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Anthony Brown brings this employment discrimination action against his employer, Tanis Concrete, Inc. ("Tanis")[1] and the company's owner, Anthony Dellechiaie (hereinafter "Tony Dell) (together, "Defendants"). Plaintiff alleges that his coworkers and supervisor at Tanis have regularly called him derogatory racial slurs since he began working there in 2005. Each Defendant has filed a separate motion for summary judgment under Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant Tony Dell's motion for summary judgment is **GRANTED**; Defendant Tanis's motion is **DENIED in part and GRANTED in part**.

## I.   BACKGROUND

The following facts are undisputed unless otherwise noted.

Plaintiff, an African-American, has worked as a concrete mixer driver for Defendant Tanis since 2005. ECF doc. 75, Third Amended Complaint ("TAC") ¶ 23. Defendant Tony Dell is the owner of Tanis. TAC ¶ 14. According to Plaintiff, shortly after he began his employment, his coworkers and supervisors began to call him derogatory racial slurs, such as "nigger" and "black mother fucker," and harass him because of his race on an almost daily basis. TAC ¶¶ 28-33, 40-43; *see also* ECF doc. 91, Ex. B (Pl. Dep.) at 31-37, 73-74, 79, 117. Several of Plaintiff's coworkers testified at their depositions that they witnessed this behavior: for example, Phillip Yucis testified that he heard Anthony Dages

---

[1] In June 2014, Tanis Concrete, Inc. became the successor-in-interest to Joel Tanis & Sons, Inc. Both companies are listed as separate Defendants; however, because the parties' employment relationship did not change, and Plaintiff's claims against both companies are identical, the Court will treat them as a single Defendant ("Tanis").

(the manager of quality control, whom Plaintiff claims was his "supervisor") call Plaintiff a "nigger" on one occasion, ECF doc. 91, Ex. D (Dep.), 7-8; Jason Howard testified that he heard Marlon Orellana (a coworker) refer to an individual as a "nigger" in Plaintiff's presence, *id.*, Ex. F at 32; Adam Davies also testified that he heard Orellana use that word in Plaintiff's presence, *id.*, Ex. H at 29; and Orellana, who is Hispanic, testified that he and other friends would occasionally address each other as "nigger," *id.*, Ex. I at 101-104.

Defendants contend that the discriminatory acts directed at Plaintiff are more "limited" in nature. Defendants assert that Plaintiff only testified to four specific incidents involving racial slurs, and that the individuals involved deny the allegations. ECF doc. 91-1 (Tanis SOMF) at 4-16. They further point out that Plaintiff's coworkers only heard others use racial slurs in Plaintiff's presence on isolated occasions, indicating that this was not a regular occurrence. *Id.*

According to Plaintiff, once he complained about the harassment to his managers and filed an EEOC charge, he received even worse treatment. TAC ¶¶ 36, 70. Specifically, his coworkers began to "overly criticize Plaintiff at every opportunity" and even "tried to kill Plaintiff by cutting his brakes on his car in retaliation for his complaints." TAC ¶¶ 35, 38-39. Plaintiff also alleges that his supervisor began taking "pictures of Plaintiff at work in order to harass and intimidate him." TAC ¶ 60.

Plaintiff further alleges that he requested a meeting with Dell to discuss the abuse, but he was denied the meeting and the abuse continued. *Id.* ¶ 54-55. Plaintiff complained to Dell on four separate occasions. At each meeting with Dell, Plaintiff specifically told Dell about the use of racial slurs and harassment by many of his coworkers. Despite these multiple complaints, each time Defendant Dell ignored Plaintiff's complaints and allow the harassment to continue. ECF doc. 83, ¶¶ 9-10. Dell contends, however, that once he became aware of the racial comments, they were put to an end. ECF doc. 81-13, ¶¶ 33-34.

Both parties agree that Defendants never implemented a formal anti-discrimination or harassment policy, and failed to distribute an employee handbook. Plaintiff is still employed by Tanis and has never been suspended or terminated.

In September 2015, Plaintiff filed his third amended complaint, asserting claims against Defendants for hostile work environment, discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination (the "NJLAD").[2]

Defendant Dell moves for summary judgment as to the claims against him: Count 1 (Discrimination, Hostile Work Environment, and Retaliation under § 1981), Count 4 (Discrimination under the NJLAD), Count 5 (Retaliation under the NJLAD), and Count 6 (Aiding and Abetting under the NJLAD). Defendant Tanis moves for summary judgment

---

[2] In June 2014, this Court dismissed in part claims against other Defendants, but because Plaintiff has not named these Defendants in his most recent Complaint, these claims are no longer relevant.

as to the claims against it: Count 1, Count 2 (Discrimination under Title VII), Count 3 (Retaliation under Title VII), and Counts 4-6.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57.

## III.   CLAIMS AGAINST DEFENDANT DELL INDIVIDUALLY

### A.  Count 4 (NJLAD Discrimination)

Defendant Dell argues that the Court should dismiss Count 4 against him, because Section 10:5-12(a) of the NJLAD does not provide for individual liability. Plaintiff does not oppose this portion of Dell's summary judgment motion or otherwise identify any specific facts showing that there is a genuine issue for trial as to this Count. Accordingly, Count 4 is dismissed against Dell.[3]  *See Resolution Trust Corp. v. Dunamr Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him . . . . [T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (internal quotation marks and citation omitted).

---

[3] The Court briefly notes that Section 10:5-12(a) prohibits "an employer" from discriminating against an employee with respect to the "terms, conditions or privileges" of his employment on the basis of his race or gender. "[T]he plain meaning of the definition of employer in the [NJLAD] does not include a supervisor." *Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008). Dell is Plaintiff's supervisor, but not his actual "employer"; therefore, summary judgment appears to be warranted on the merits as to this Count, as well.

### B.  Count 5 (NJLAD Retaliation)

A prima facie case of retaliation under Section 10:5-12(d) of the NJLAD is established where the Plaintiff alleges that (1) he engaged in a protected activity known to the Defendant; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  *Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001); *Woods-Pirozzi v. Nabisco*, 290 NJ Super. 252, 274 (App. Div. 1996).

Here, Plaintiff has failed to establish a prima facie case of retaliation against Dell individually.  Plaintiff engaged in a protected activity (filing the EEOC charge), which was known to Dell.  However, the only resulting "adverse employment action" that Plaintiff alleges that he suffered at the hands of Dell is "the fact that Defendant Dell to this day still does not have an employee handbook or an anti-discrimination policy," which "clearly shows that Defendant Dell is acting out of spite."  Opp. Br. at 9-10.

Plaintiff does not provide, and this Court cannot find, any case law suggesting that the failure to disseminate an employee handbook or anti-discrimination policy alone constitutes an "adverse employment action" under the NJLAD.  *See generally Greaser v. Missouri Dep't of Corr.,* 145 F.3d 979, 984 (8th Cir. 1998) ("Although actions short of termination may constitute an adverse employment action within the meaning of the statute, not everything that makes an employee unhappy is an actionable adverse action.'"); *Patterson v. Cannon*, 2010 WL 3419229, at *11 (N.J. Super. Ct. App. Div. Aug. 24, 2010) (holding that, while certain treatment may be "neglectful" or "distasteful," it does not amount to an 'adverse employment action' for the purposes of an NJLAD retaliation claim).  Moreover, Plaintiff has not provided any evidence – beyond his own conclusory conviction that Dell "is acting out of spite" – that Dell's failure to institute an anti-discrimination policy has any causal connection to Plaintiff's protected activity.  *See generally Sconfienza v. Verizon Pennsylvania Inc.*, 307 F. App'x 619, 623 (3d Cir. 2008) ("Because [Plaintiff] has offered no evidence to show the causal connection . . . . summary judgment was proper.").  Accordingly, summary judgment is warranted as to this claim.

### C.  Count 6 (NJLAD Aiding and Abetting)

To be held individually liable for discrimination under the Section 10:5-12(e) of the NJLAD, a supervisor must have "aided and abetted" the alleged discrimination.  *Tarr v. Ciasulli*, 181 N.J. 70, 82 (2004).  To be liable as an aider or abetter, "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation."  *Id.* at 929.

4

Even assuming that, as Plaintiff contends, Dell had knowledge of the racial slurs directed against Plaintiff by other Tanis employees, and that Dell failed to effectively respond to Plaintiff's complaints, this conduct falls short of the "active and purposeful conduct" required to hold Dell liable for aiding and abetting under the NJLAD. *See Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 595 (2008) (holding that evidence that supervisors failed to "act so as to protect plaintiff or effectively respond to his complaints of discrimination . . . . fall well short of the 'active and purposeful conduct'" required to constitute aiding and abetting). Summary judgment is therefore granted in favor of Dell as to this claim.

### D. Count 1 (Discrimination/Hostile Work Environment and Retaliation Under § 1981)

An individual can only be liable under § 1981 if he acted with "purposeful discrimination" and was personally involved in the discrimination. *Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 268 (3d Cir. 2010); *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986). A defendant was "personally involved in the discrimination . . . if they intentionally caused the [employer] to infringe on [Plaintiff's] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji*, 784 F.2d at 518.

Here, Plaintiff alleges that "Defendant Dell's actions in not dissuading the ongoing hostile work environment, even still today, establishes that he has intentionally authorized such conduct and comments." But an individual Defendant's failure to respond to discrimination "does not sustain a finding of purposeful discrimination." *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011). And Plaintiff does not allege that Dell personally retaliated against him, as described above. Accordingly, Plaintiff's § 1981 claim against Dell fails as a matter of law. *Id.*

## IV. CLAIMS AGAINST DEFENDANT TANIS

### A. Legal Standards[4]

#### i. Discrimination/Hostile Work Environment under § 1981, Title VII, and the NJLAD

To establish a discrimination claim based on a hostile work environment under both Title VII and § 1981, a Plaintiff must show that: (1) he suffered intentional discrimination

---

[4] The Court notes that New Jersey courts looks to federal law "as a key source of interpretative authority" in analyzing claims under the LAD. *See Brounstein v. American Cat Fanciers Assoc.*, 839 F. Supp. 1100, 11009 (D.N.J. 1993) (citing *Grigoletti v. Ortho Pharmaceutical Corp*., 118 N.J. 89, 97 (1990)). Therefore, the Court will analyze the parallel state and federal standards concurrently when appropriate.

5

because of his race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the basis for employer liability is present. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) (citations omitted); *see also Verdin v. Weeks Marine Inc.*, 124 F. App'x. 92, 95 (3d Cir. 2005). To withstand a motion for summary judgment in a discrimination case, a plaintiff only need show sufficient evidence to create a genuine issue of material fact as to whether the defendant intentionally discriminated against him. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990).

"A single racial epithet, uttered by a supervisor, might suffice to prove the existence of a hostile work environment, thus making the employer liable." *Cicchetti,* 194 N.J. at 592-93 (internal citations omitted). If the harassing employee is the victim's co-worker, the employer is liable only if [the employer] was negligent in controlling working conditions." *Vance v. Ball State Univ.,* 133 S. Ct. 2434, 2439, (2013); *see also Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 333–34 (4th Cir. 2003) (en banc) ("[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it.").

### ii. Retaliation under § 1981, Title VII, and the NJLAD

To establish a retaliation claim under § 1981, Title VII, or the NJLAD, a Plaintiff must establish that: (1) he participated in protected activity; (2) his employer took an adverse employment action after or contemporaneous with the protected activity; and (3) there is a causal link between the protected activity and the employer's adverse action. *See Kant v. Seton Hall Univ.*, 289 F. App'x. 564, 567 (3d Cir. Aug. 27, 2008) (internal citations omitted). Increased harassment may form the basis for a retaliation claim. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998).

### iii. Aiding and Abetting under NJLAD

Section 10:5–12(e) of the NJLAD prohibits any person from aiding or abetting another in committing any acts prohibited by the LAD. This provision is generally designed to impose liability upon a party for aiding and abetting the unlawful acts of the employer. *See Colello v. Bayshore Cmty. Health Servs*., 2010 WL 1753164, at *14 (N.J. Super. Ct. App. Div. Apr. 28, 2010) (citing *Tarr,* 181 N.J. 70, 84 (2004) and *Figueroa v. City of Camden,* 580 F. Supp. 2d 390, 405 (D.N.J. 2008)). Aiding and abetting requires "active and purposeful conduct." *See Cicchetti*, 194 N.J. at 595.

### B. Discussion

The Court finds that Plaintiff has established prima facie claims for discrimination, hostile work environment, and retaliation against Tanis under federal and state law. Plaintiff's deposition testimony and affidavit (combined with the corroborating testimony

from his co-workers) that he was called racial epithets by both co-workers and his supervisor multiple times suffices to allege a discriminatory and hostile work environment. *See Cicchetti*, 194 N.J. at 592-93 (2008); *see generally Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (finding that unambiguous racial epithets create a hostile work environment). Moreover, even if Todd Danges was not Plaintiff's "supervisor," but merely a co-worker, Tanis may be found negligent by a jury for failing to promulgate an employee handbook or formal anti-discrimination policy following Plaintiff's complaints. *See Vance,* 133 S. Ct. at 2439. Plaintiff's claims that he was further harassed after he complained about the hostile work environment and filed an EEOC complaint are sufficient to allege a retaliation claim against Tanis. *See Boumehdi,* 489 F.3d at 793.

In its motion for summary judgment, Tanis disputes the number of times that Plaintiff was on the receiving end of racist comments, stating that "Plaintiff's claims are exaggerated, at best" and pointing out that his allegations of racial discrimination were more "limited" at his deposition than in his complaint. Def. Br. at 12. Tanis further argues that "each of the individuals [who allegedly discriminated against Plaintiff] deny the allegations." But a reasonable jury who accepts Plaintiff's version of events – and the corroborating witnesses' testimonies in favor of this version – could find that Plaintiff was subjected to a discriminatory and hostile work environment, and retaliated against for opposing this discrimination, and that Tanis was negligent in failing to control these working conditions.

The Court therefore concludes that summary judgment is inappropriate as Counts 1 though 5 against Tanis. At bottom, resolution of these claims will require credibility determinations and the weighing of evidence, both functions that are clearly within the province of the jury. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 254 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment.").

In fact, Tanis's brief in support of its summary judgment motion perfectly encapsulates the "he said, she said" nature of this action:

> [One co-worker] claims that he heard John Mernick refer to Plaintiff by a racial slur. Mr. Mernick denies this. Plaintiff claims that Phil Yucis overheard [Plaintiff's supervisor] make a racial slur. Plaintiff was not present for this incident and [Plaintiff's supervisor] denies it. . . . Plaintiff claims that Marlon Orellana directed racial slurs at him, which caused him to physically accost him . . . . Mr. Orellana denies addressing Plaintiff in the way Plaintiff describes.

ECF doc. 91-2 (Def. Br.) at 8. Because genuine issues of material facts remain as to witness credibility and the impetus behind Tanis's (and its employee's) actions, Tanis's motion for

summary judgment must be **DENIED** as to those Counts. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993) ("Summary judgment is inappropriate when a case will turn on credibility determinations and . . . on state of mind") (internal citations omitted).

However, the Court will **GRANT** Tanis's motion with respect to Count 6, aiding and abetting under the NLAD. First, Plaintiff has failed to identify any legal authority which would support the notion that a party can be held liable for aiding and abetting its own unlawful conduct. And, even assuming that Tanis management failed to effectively respond to Plaintiff's complaints about its employees, this conduct falls short of the "active and purposeful conduct" required to hold Tanis liable for aiding and abetting under the NJLAD. *See Cicchetti*, 194 N.J. at 595. Plaintiff has not otherwise alleged any facts to support a theory of "aiding and abetting"; accordingly, summary judgment is warranted as to this claim.

### V.     CONCLUSION

For the reasons stated above, Defendant Dell's motion for summary judgment is **GRANTED**. Defendant Tanis's motion is **DENIED** as to Counts 1 though 5, and **GRANTED** as to Count 6. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 21, 2016**